

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-5-2007

# Ozmen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3528

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ozmen v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1532.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1532

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-3528

———

ADEM OZMEN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A97-849-045)
Immigration Judge:  Hon. Daniel A. Meisner

———

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2007

Before: SLOVITER and AMBRO, Circuit Judges, and BRODY,[*] District Judge

(Filed: March 5, 2007)

———

OPINION

———

[*] Hon. Anita B. Brody, United States District Court for the
Eastern District of Pennsylvania sitting by designation.

SLOVITER, Circuit Judge

Adem Ozmen ("Petitioner") has filed a petition for review from the decision of the

Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision

to deny his application for asylum, withholding of removal and relief under the

Convention Against Torture ("CAT"). We have jurisdiction to review the petition based

upon 8 U.S.C. § 1252(a)(1). For the reasons stated below, we will deny the petition for

review.

**I.**

Ozmen is a native and citizen of Turkey. He arrived in the United States on

August 20, 1998 as a non-immigrant student. He initially attended Rutgers University but

stopped attending college in April 2003. Ozmen thereafter applied for asylum on

September 15, 2003, claiming fear of persecution because he is a homosexual. After an

interview with the Department of Homeland Security ("DHS"), Ozmen was placed in

removal proceedings. The DHS referred Ozmen's application to the Immigration Court

in Newark, New Jersey, where he was given a hearing before an IJ on February 3, 2004.

At the hearing, Ozmen conceded removability, but applied for asylum, withholding of

removal, and relief under the CAT.

Ozmen's claim both before the IJ and here is that he has been persecuted in Turkey

on account of his sexual orientation and has a well-founded fear of persecution if he is

returned to Turkey. Ozmen, who was the only witness, testified that as a young child he

was teased and tormented by his fellow classmates due to his effeminate nature. He

2

testified that authorities in the school refused to do anything about the situation because they hoped such treatment would make him "more a man." App. at 72. Ozmen stated that while at college in Turkey he attempted to start a "gay student association" but the Dean refused, stating that a gay student union was illegal. App. at 273-74. Shortly thereafter, according to his application for asylum, he and four other gay university students were arrested. According to Ozmen, the police questioned, harassed, and kept him overnight before permitting him to leave the next morning. He testified that while detained he was struck by the police but did not say he sought medical treatment as a result of the incident. He and the other students returned to the university, but as a result of his arrest his fellow students learned that he was gay. This "outing" led to an altercation whereby three students attacked him in the shower: stealing his towel, throwing him to the ground, kicking him, and threatening him with rape if he did not "become straight." App. at 71-274.

Ozmen and the Government introduced documents at the hearing before the IJ in support of their respective positions. Following the hearing the IJ issued an oral decision rejecting Ozmen's application for asylum, withholding of removal, and relief under the CAT. The IJ did grant him a 60-day period of voluntary departure, but he appealed to the BIA.

On June 23, 2005, the BIA affirmed the IJ's decision without opinion. This timely petition for review followed.

**II.**

3

Where, as here, the BIA has not rendered its own opinion but rather has deferred to or adopted the opinion of an IJ, we review the decision of the IJ as the final agency decision. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004); Dia v. Ashcroft, 353 F.3d 228, 243 (3d Cir. 2003) (en banc). Furthermore,

> [w]hether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual question, which we review under the substantial evidence standard. Adverse credibility determinations are also reviewed for substantial evidence. We will uphold the findings of the BIA to the extent that they are supported by reasonable, substantial and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the BIA did.

Mulanga v. Ashcroft, 349 F.3d 123, 131 (3d Cir. 2003) (internal citations and quotations omitted).

To qualify as a "refugee" who may receive asylum, an alien must establish that s/he is unable or unwilling to return to his or her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The persecution alleged must be at the hands of the government or individuals the government is either unable or unwilling to control. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

To establish a well-founded fear of persecution, an asylum applicant must demonstrate a subjective fear of persecution through credible testimony that his or her fear is genuine. Sukwanputra v. Gonzales, 434 F.3d 627, 637 (3d Cir. 2006); Zubeda v.

4

<u>Ashcroft</u>, 333 F.3d 463, 469 (3d Cir. 2003).  The BIA and this court have defined persecution as "'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'"  <u>Lie v. Ashcroft</u>, 396 F.3d 530, 536 (3d Cir. 2005) (citing <u>Fatin v. INS</u>, 12 F.3d 1233, 1240 (3d. Cir. 1993)).   However, persecution does not "encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional."  <u>Fatin</u>, 12 F.3d at 1240.

The threshold for establishing eligibility for withholding of removal is higher than that for establishing entitlement to asylum and requires the alien to demonstrate a "clear probability of persecution," or that it is "more likely than not" that he or she will be persecuted upon return to his home country.  <u>INS v. Cardozo-Fonseca</u>, 480 U.S. 421, 430 (1987); <u>Li Wu Lin v. INS</u>, 238 F.3d 239, 244 (3d Cir. 2001).  An applicant who does not qualify for asylum necessarily does not qualify for withholding of removal.  <u>Guo v. Ashcroft</u>, 386 F.3d 556, 561 n.4 (3d Cir. 2004).

Finally, to qualify for relief under the CAT, an applicant for relief bears the burden of proving through objective evidence that it is "more likely than not" that s/he would be tortured in the country to which the applicant would be removed.  <u>Wang v. Ashcroft</u>, 368 F.3d 347, 349 (3d Cir. 2004) (quoting 8 C.F.R. § 1208.16(c)(2)).  Furthermore, torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . for any reason based on discrimination of any kind. . . ."  8 C.F.R. § 1208.18(a)(1).  While a petitioner is not required to show that s/he would be tortured on account of one of the statutorily enumerated factors, petitioner does carry

the burden of proving the torture would occur "with the consent or acquiescence of a public official or other person acting in an official capacity." Id.; see also Lukwago v. Ashcroft, 329 F.3d 157, 183 (3d Cir. 2003).

The IJ found that Ozmen was ineligible for asylum because, inter alia, he failed to meet his burden of proof to establish persecution. This conclusion is supported by substantial evidence. Although he was teased about being a homosexual and was attacked on one occasion by three fellow students for being a homosexual, this does not rise to the level of persecution. Additionally, these incidents did not involve the essential element of government action. In contrast, his arrest and detention overnight by police did involve government action, but it did not rise to the level of persecution. Rather, as the IJ noted, although Ozmen stated that he was "beat[en] up" and "slapped" by the police, App. at 65, the conduct of the police, while reprehensible, does not in this "single incident of detention for some hours [followed by release] the next morning," App. at 6, amount to persecution.

Because Ozmen has not satisfied the required burden of proof to show eligibility for asylum, we also find that he has failed to meet the higher burden of proof to show withholding of removal or withholding of removal under the CAT.

Ozmen contends that the IJ failed to act as a neutral and impartial factfinder. It is undisputed that an IJ may introduce evidence into the record. Mulanga, 349 F.3d at 135. Furthermore, "'[when] the Immigration Judge relies on the country conditions in adjudicating the alien's case, the source of the Immigration Judge's knowledge of the

6

particular country must be made part of the record.'" Caushi v. Atty. Gen., 436 F.3d 220, 231 n.7 (3d Cir. 2006) (quoting In re S-M-J, 21 I. & N. Dec. 722, 727, 1997 WL 80984 (B.I.A. 1997)).

In this case, the IJ provided a portion of a United Kingdom country report of Turkey to both parties at the February 3, 2004 hearing, and neither party objected. The portion of the report at issue contained data on Turkey's treatment of "homosexuals, transsexuals, and transvestites." App. at 7. However, in addition to this report, the IJ also questioned Ozmen on two articles found on the internet entitled "Gay Times" and "Lambda Istanbul." App. at 81-83.

Ozmen contends that it was error for the IJ to "conduct[ ] his own research." Petr.'s Br. at 11. Neither of these articles became part of the record. The IJ did not commit error in asking Ozmen about these internet articles. Although the IJ used the articles to question Ozmen about the "gay scene," App. at 81, in Turkey and to determine whether he knew of any homosexual organizations in Turkey, in his oral opinion the IJ did not rest his decision on these two articles. At most, it would have been harmless error. Instead, he referred to the United Kingdom country report that he did provide to both parties without objection. According to that report, there is a "fairly well-developed homosexual scene" in cities "like Istanbul, Izmir or Ankara," and there are some "active homosexual rights organisations." App. at 88. The IJ recognized that Ozmen may be subjected to harassment and discrimination because of his sexual orientation if he returns to Turkey, but held that such treatment does not equate to persecution. Ozmen failed to

7

present evidence that his treatment rose to the level of persecution. The country report provided evidence to support the IJ's conclusion that Ozmen failed to establish that his life or freedom would be threatened if he were to return to Turkey or that the Turkish government would torture him or acquiesce or consent to his torture.

### III.

In sum, we conclude that Ozmen failed to provide evidence of past persecution or future persecution and, as such, the IJ did not abuse its discretion in denying Ozmen's applications. For the reasons stated above, we will deny Ozmen's petition for review.

8